## NEGLIGENCE IN CROSSING A STREET BEFORE AN APPROACHING CAR.

Court of Appeals for Hamilton County.

THE CINCINNATI TRACTION COMPANY v. OTTO W. EDWARDS, ADMINISTRATOR.

Decided, June 14, 1915.

*Pedestrian Crossing Street—Struck by Car Running at Excessive Speed —But which He Could Have Seen and Heard Had He Used His Faculties—Errors in Charge to Jury.*

1. If the decedent saw or heard the approaching car in front of which he stepped and was struck, or if he could have seen and heard it had he looked and listened as an ordinarily prudent person would have done under the circumstances, his own contributory negligence will defeat recovery, notwithstanding the defendant company was negligent in running the car at a high and dangerous rate of speed.
2. It is prejudicial error for a trial judge to assume in his charge to the jury that the accident occurred at a given point, when there is uncertainty as to the point at which it occurred and the question should have been left to the jury to determine; or to say to the jury that the decedent had a right to assume the motorman would not approach the crossing in a negligent manner, when he could have seen had he used his eyes that the car was approaching at a very high rate of speed; or to fail to charge on the subject of contributory negligence when a request so to do had been made; or to charge on the doctrine of "last chance" when there was no evidence showing that the doctrine was applicable.

*George H. Warrington* and *Robert S. Marx,* for plaintiff in error.

*Fulford, Shook & Schwaab,* contra.

GORMAN, J.; JONES (E. H.), P. J., and (JONES (Oliver B.), J., concur.

The defendant in error as administrator of Seburn Edwards, deceased, brought an action in the Superior Court of Cincinnati.

to recover damages resulting to the next of kin of Seburn Edwards, deceased, on account of the alleged negligence of the plaintiff in error which resulted in fatal injuries to decedent from which he died the day following the injuries. A verdict and judgment for $3,500 was given in favor of the defendant in error, and this proceeding is here to reverse said judgment.

The facts of the case, as disclosed by the record, necessary to be set out are substantially as follows:

On the night of November 9, 1911, at or about 9:30 o'clock, Edwards, the decedent, undertook to cross Erie avenue from the south to the north side thereof at or near the intersection of Shady lane in Hyde Park. Erie avenue, running east and west, was and is eighty feet wide at this point and for a distance of several squares east and west of this point. The sidewalks on either side of this street are ten feet wide. There was a double street car track on Erie avenue, the outer rails of which were eleven feet from either curb; the tracks between the rails were five feet in width; and there was a roadway of twenty-eight feet between the east-bound and west-bound tracks.

At the time Edwards stepped from the south curb to cross to the north side of the street, a car owned and operated by the plaintiff in error was approaching Shady lane from the east, and was about 1,000 feet east of Shady lane going west on the north side of Erie avenue at a great rate of speed, estimated by two witnesses at from twenty to twenty-five miles per hour. The lights in the car were all lighted, the headlight was burning, and the gong according to most of the witnesses was being rung continuously from Paxton road, a point 900 or 1,000 feet east of Shady lane, down to Shady lane. From Paxton road to Shady lane the grade is quite sharp towards the west. The testimony of some of the witnesses who observed Edwards crossing the street is that he staggered, walked zigzag or wobbled, and appeared to be intoxicated. One witness who observed him while crossing saw nothing peculiar in his gait. There was evidence tending to show that he ordinarily walked with a swaying motion or a perceptible swinging movement. There was evidence tending to show that he had been in the habit of drink-

ing to excess at times and that his wife had secured a divorce from him about one year before, among other grounds on that of habitual intoxication, failure to provide and extreme cruelty.

There were no other vehicles on Erie avenue except this car for several squares east or west of Shady lane. There were no obstructions on the street to prevent any ordinary person, situated as Edwards was and possessing ordinary sight and hearing, from seeing and hearing this car.

Edwards was struck by this west bound car at some point west of the northwest corner of Erie avenue and Shady lane, variously estimated at from 15 feet to 100 feet, and the body was found at this point near the north gutter. When taken up he was unconscious and was removed to the city hospital where he died the next day, from the effects of his injuries, without regaining consciousness, leaving two sons as his next of kin. The car that struck him ran a distance of about 100 feet before it was stopped.

All of the evidence as to the occurrence was offered by the plaintiff below. The defendant below did not offer the motorman or any other witness as to how Edwards was injured, but only offered two witnesses as to the earnings of Edwards during the year prior to his death. No one riding on the car saw the accident. The four witnesses who saw Edwards before and at about the time he was struck were all on the north side of Erie avenue east of Shady lane. One witness, Mr. Fening, was standing either on the northeast or northwest—probably the northwest—corner of Shady lane and Erie avenue, waiting to board the car and signaling it to stop, and did not see Edwards struck. The car passed him without stopping, and ran about 150 feet west of him before stopping. Edwards must have been struck west of the place where Fening was standing, and the car when it struck him was interposed between Edwards and this witness thus cutting off his view.

These four witnesses who saw Edwards before and just about the instant he was struck say that he walked upon the track just in front of the car, one or two of them stating that just as the car was almost upon him he threw up his hands. They say that

when he stepped upon the track the car was so near him that it was impossible to stop the car in time to avoid striking him because of the high rate of speed at which it was traveling.

The defendant, among other things, set up the plea of contributory negligence, and at the close of plaintiff's evidence and again at the close of all the evidence moved the court to instruct the jury to return a verdict in its favor on the ground that the undisputed evidence showed that decedent came to his death by his contributory negligence.

These motions were overruled, and the principal error urged in this court is the failure of the trial court to grant said motions.

There are other errors urged such as gross excessiveness of the verdict, errors in the charge prejudicial to defendant, and the admission of hearsay, incompetent and immaterial evidence over defendant's objection.

Without undertaking to set out or analyze the testimony of the witnesses embraced in a voluminous bill of exceptions of 450 pages, we have come to the conclusion from a perusal of the record that the evidence is such that there is a presumption that decedent came to his death by reason of his contributory negligence. There is no question but that the defendant company was guilty of negligence in running its car at such a high and dangerous rate of speed at the time when and place where the injuries were inflicted on decedent; but it is quite clear that the decedent could not have failed to see and hear the rapidly approaching car for a considerable distance before he was struck, if he had looked or listened. It was his duty to use his faculties and ordinary care under the circumstances to avoid being injured. We think that upon the evidence adduced on behalf of the plaintiff it manifestly appears that the decedent was negligent in going upon the car track at the time and place shown, when by the exercise of ordinary care he would not have been injured. Whether his conduct was due to carelessness, intoxication or premeditation, we can not say, but it appears clearly to us that plaintiff below failed to remove the presumption raised by his evidence that the proximate cause of Edwards' death

was his contributory negligence.  The burden was upon plaintiff to remove this presumption by evidence sufficient to establish the fact that Edwards' own contributory negligence did not bring about his fatal injuries.

If Edwards saw and heard the car when he stepped upon the track in front of the rapidly moving car, he was guilty of such contributory negligence as precluded a recovery in this case. If he did not see or hear the car when he could have seen or heard it had he looked and listened as an ordinarily prudent person would and should have done, then he was guilty of contributory negligence and plaintiff should not recover.  There was no evidence adduced that his eyesight or hearing was impaired, and the evidence clearly shows that an ordinarily prudent person whose sight and hearing were unimpaired, situated as Edwards was at the time and place the car was approaching him just before he stepped upon the track could not have failed to see and hear the car and realize the danger of attempting to cross the track in the face of this fast moving car.  *Traction Co.* v. *Charles,* 14 C.C.(N.S.), 506; affirmed without opinion, 87 O. S., 475.

As to the claim that the verdict was grossly excessive, we are not prepared to say that it was so if the plaintiff had a right to recover, although it is extremely doubtful if the evidence shows that his two sons would have benefitted in a pecuniary sense to the extent of $3,500 had Edwards' life not been crushed out at the time and place of the accident.  It is indeed a harsh, cold-blooded rule which the law lays down in capitalizing the value of a man's life to his next of kin, but there is no other rule known to the courts in determining what damages shall be awarded for the wrongful death of one to those who have a pecuniary interest in his life, except to ascertain and speculate, as it were, how much is that human being worth to his next of kin as a money-making machine, taking into consideration his age, health, habits, ability to earn money, how much he has earned, how much he gave to his next of kin and the probabilities of his life, and such other facts as would enable a jury to place a monetary value on his life to his children, his next of kin.

There were several errors in the general charge; for instance, the assumption by the court that Edwards was struck at a street crossing, whereas this was a question of fact to be submitted to the jury under proper instructions; the statement in the charge that Edwards had a right to act upon the assumption that the motorman would not be negligent in approaching the crossing, when the evidence showed that Edwards saw or could have seen without assumption that the car was running at a high and excessive rate of speed. He knew, or should have known if he had used his faculties, that he could not at the time and place rely on any such assumption. *Coal Co.* v. *Estievenard,* 53 O. S., 43, 58; *Wabash R. R. Co.* v. *Kiles,* 64 O. S., 458.

The court failed to charge correctly on the question of contributory negligence which was pleaded, and although asked to charge upon this point by defendant's counsel there was a failure to respond to the request. This we think was error.

The court charged on the doctrine of "last chance" when there was no evidence, as we read the record, showing a last chance case. In order to make out a case of last chance it must be made to appear that the party killed or injured was in a position of danger caused by his own neglect and from which he can not extricate himself, and that his condition and danger are known to the other party who neglects or fails to avoid injuring or killing the person in a dangerous situation. *R. R. Co.* v. *McCormick,* 69 O. S., 45; *R. R. Co.* v. *Kassen,* 49 O. S., 230; *Davies* v. *Mann,* 10 M. & W. (Eng.).

The court erred in the admission of the evidence of Mr. Conway, Edwards' attorney, as to his opinions of Edwards' habits.

All of these errors herein pointed out were, in our opinion, prejudicial to defendant below. We are, therefore, of the opinion that because of these errors substantial justice was not done in this case, and that the judgment of the trial court should be reversed and the cause remanded for a new trial.